UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SCOTT DAVI,<br><br>                    Plaintiff,<br><br>        vs.<br><br>DARRIN YOUNG, WARDEN, IN HIS<br>INDIVIDUAL CAPACITY; BOB DOOLY,<br>WARDEN, IN HIS INDIVIDUAL<br>CAPACITY; AND DENNY KAEMINGK,<br>SECRETARY OF CORRECTIONS, IN<br>HIS INDIVIDUAL CAPACITY;<br><br>                    Defendants. | 4:14-CV-04184-KES<br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

Plaintiff, Scott Davi ("Davi") is an inmate at the South Dakota State

Penitentiary ("SDSP") in Sioux Falls, South Dakota.  The court takes judicial

notice of the file from Davi's underlying criminal conviction in the Second

Judicial Circuit, Minnehaha County, South Dakota, State of South Dakota v.

Davi, CR No. 90-4826 (Second Judicial Circuit, Minnehaha County, South

Dakota) as well as the two published opinions of the South Dakota Supreme

Court which (1) affirmed his conviction on direct appeal and (2) denied his

request for state habeas relief. [1]  See Hood v. United States, 152 F.2d 431 (8th

---

[1] Davi's claim for federal habeas relief was likewise denied.  See Davi v. Weber,
Civ. No. 00-4147, United States District Court, District of South Dakota,
Southern Division.  Aff'd, Davi v. Weber, Appeal No. 04-3644, United States
Court of Appeals for the Eighth Circuit.

Cir. 1946) (federal district court may take judicial notice of proceedings from another federal district court); Matter of Phillips, 593 F.2d 356 (8th Cir. 1979) (proper for federal court to take judicial notice of state court pleadings); Green v. White, 616 F.2d 1054 (8th Cir. 1980) (court of appeals may take judicial notice of district court filings).

Davi has filed a lawsuit pursuant to 42 U.S.C. § 1983, alleging the defendants have violated his civil rights in various ways.  Davi has been granted in forma pauperis status and has paid his initial partial filing fee.

The Court has, as it must, "screened" this case pursuant to 28 U.S.C. § 1915, and has determined it must be dismissed  for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii).

## JURISDICTION

The pending matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's October 16, 2014 Order.

## FACTUAL BACKGROUND

Davi was convicted in June, 1991 of first degree murder, burglary, rape, and being a habitual offender in connection with the death of his ex-wife, Dianne Davi.  State v. Davi, 504 N.W.3d 844, 847 (S.D. 1993).   Davi and Dianne had a turbulent relationship which Dianne tried to sever when she learned in October, 1990 that Davi's live-in girlfriend was pregnant.  Id.  at 847.  On November 2, 1990, Dianne was found dead in her apartment.  Id. at 848.  Davi was convicted of her murder.  Id. at 847.  The late South Dakota circuit judge, R.D. Hurd, sentenced Davi.  He was sentenced to four life

2

sentences, plus a fifteen year sentence and a twenty year sentence, all to be served concurrently.  Davi's conviction was affirmed on appeal.  Id.  at 857. The South Dakota Supreme Court likewise denied Davi habeas relief.  Davi v. Class, 609 N.W.3d 107, 118 (S.D. 2000).  It appears Davi served a portion of his  sentences in Illinois pursuant to an Interstate Compact Agreement, but has now been transported back to the South Dakota State Penitentiary.  See Docket 4, p. 1.

In his Complaint in this matter, Davi alleges three causes of action.  In Count 1 he asserts a due process cause of action based upon what he claims is the enforcement of an unlawful South Dakota Department of Corrections ("DOC") policy.  Docket 1 at p. 4.

Davi did not provide the court with a copy of the policy,[2] but he explains he was transferred back to the SDSP after being housed in a prison in Illinois for thirteen years under an Interstate Compact agreement.  See Docket 4, p. 1. After being transferred back to the SDSP, "80% of [his] money was taken and put into sub account for payment of court costs and incarceration costs.  This Policy 1.1.B.2 is an unlawful policy that cannot be enforced as it is an unconstitutional policy."  Complaint, Docket 1, at p. 4.

---

[2] Davi's lawsuit challenges the constitutionality of two DOC policies:  1.1.B.2 and 1.5.D.3.  Davi made specific reference to each policy in his Complaint (Docket 1) and his Supplement/Brief (Docket 4) but did not attach copies of the policies to either document.  The policies are publicly available, however, on the South Dakota DOC website.  See http://doc.sd.gov/documents/about/policies/Inmate%20Accounts%20and%20Financial%20Responsibility.pdf (last checked March 12, 2015); http://doc.sd.gov/documents/about/policies/Offender%20Correspondence.pdf (last checked March 12, 2015).

Davi asserts he has been injured because the defendants "stole" money from his prison account by deducting $195.48 in what he characterizes as court costs and $152.10 for costs of incarceration.  Id.

In Count 2, Davi again asserts Policy 1.1.B.2 is unlawful.  The basis for Count 2, however, is Davi's claim that implementation of the Policy "violates [his] Sentencing and Judgment Order."  Davi explains his "[s]entencing order states that I'm to be housed, fed and clothed and that all fees and costs are waived.  The taking of money for incarceration costs and court costs violates the order."  Docket 1 at p. 5.

On the face of the Complaint, Davi characterizes his Count 3 claim as a due process and freedom of speech cause of action.  Docket 1 at p. 6.  Specifically, Davi explains the SDSP policy allows "only 10 pages of mail in at a time from any person and due process by enforcing an unlawful policy 1.5.D.3 by not allowing in more than 10 pages of related material in at any time."  Id.

In his Supplement/Brief Davi explains the policy which restricts the number of pages in correspondence applies to non-legal mail (mail which is received from persons other than the inmate's attorney).  See Docket 4 at p. 4.  In his Supplement/Brief, Davi asserts the policy hampers his access to the courts and violates his freedom of speech.  Id.  Davi claims the policy which limits the number of pages per mailing is "costing family members more money to help [him] with meaningful access to the court."  Id.  The court's review of Policy 1.5.D.3 reveals it explicitly limits the number of pages that may be

contained in incoming mail.  See Policy 1.5.D.3 at p.8.  There, in Section IV.8.
A.10 ("Procedures") the Policy explains :

> **8.    Rejecting Correspondence:**
> A.    The following items and/or incoming and outgoing general
> correspondence containing any of the following may be rejected
> (not an inclusive list):
>
> **\*\*\***
>
>> 10.    Postage stamps, plain or stamped envelopes, stickers,
>> maps, calendars, Polaroid photos, unused cards or
>> postcards,   more than five(5) small newspaper clippings,
>> more than ten (10) sheets of paper, homemade craft items or
>> altered magazines (including any picture, articles, or any
>> item that has been taken out of a magazine).

Davi also refers to a mailroom rejection notice as Exhibit 2 attached to
his Brief/Supplement.  Id. at p. 5.  There was no Exhibit 2, however, attached
to Docket 4.  The Court has reviewed the sample "Mailroom Correspondence
Rejection Notice—Sender" form which is attachment 9 to the online version of
Policy 1.5.D.3.  One of the potential reasons for rejection listed on the form
reads as follows:

> The item contains postage stamps, plain or stamped envelopes,
> stickers, maps, calendars, polaroid photos, unused postcards,
> more than five (5) small newspaper clippings, more than ten (10)
> sheets of extra paper unrelated to the correspondence, homemade
> craft items, altered magazines, homemade cards or envelopes,
> musical cards or cards larger than 8 ½" x 11.

## DISCUSSION

**A.    Rule 12(b)(6) and 28 U.S.C. § 1915 Screening Standards.**

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)  and 1915A(b)(1), a prisoner's
complaint should be dismissed on screening if it "fails to state a claim upon
which relief may be granted."  This standard is the same standard as is used to

5

determine whether a complaint satisfies the standards of Fed. R. Civ. P. 12(b)(6).  Kane v. Lancaster County Dept. of Corrections, 960 F.Supp. 219 (D. Neb. 1997).  "In evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.' " Jackson v. Nixon, 747 F.3d 537, 541 (8th Cir. 2014) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).  "When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper framework."  Id. at 544 (quoting Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004)).

The United States Supreme Court addressed the standard that district courts are to apply to Rule 12(b)(6) motions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

The law predating Twombly and Iqbal held that under Rule 12(b)(6), the court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (emphasis added).  However, Conley's "no set of facts" language was overruled in Twombly.  Twombly, 550 U.S. at 563.  Instead, the Court adopted a standard by which plaintiffs must plead "enough facts to state a claim to relief that is *plausible* on its face."  Id. at 570 (emphasis added).

6

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 554-55 (quoting FED. R. CIV. P. 8(a)(2)). A complaint does not need "detailed factual allegations" to survive a motion to dismiss, but a plaintiff must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action. Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). The Court also imposed a "plausibility standard," holding that a claim "requires a complaint with enough factual matter (taken as true)" to support the conclusion that the plaintiff has a valid claim. Id. at 556. The plaintiff's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief. Id.

There are two "working principles" from Twombly and Iqbal. Iqbal, 556 U.S. at 678. First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a complaint. Id. (citing Papasan, 478 U.S. at 286). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79.

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir.

2007)).  Where the plaintiff's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has *alleged*–but has not "show[n]"–that he is entitled to relief as required by Rule 8(a)(2).  Iqbal, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the complaint that are conclusory and therefore not entitled to the presumption of truth.  Id. at 679-680.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief.  Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.  It is through the lens of Twombly and Iqbal that the court examines the sufficiency of Davi's complaint to determine whether it survives screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii))  and 1915A(b)(1). With these standards in mind, Davi's Complaint and Brief/Supplement have been carefully considered.

**B.    Davi's Complaint fails to state a claim upon which relief may be granted**.

Considering Davi's Complaint and Supplement/Brief, none of his three causes of action state a claim upon which relief may be granted.

### 1. Count 1:  DOC Policy 1.1.B.2 Does Not Violate the Due Process Clause.

Davi's description of Count 1 in his Complaint is minimalist, but his Supplement/Brief explains he believes the policy violates due process because

8

it is vague and was incorrectly applied in his case.  The court disagrees.  DOC Policy 1.1.B.2 explains  "after an inmate's spend subaccount limit reaches $140.00 during any calendar  month, a percentage established by the DOC may be transferred to the inmate's savings subaccount based on receipt type. Any remaining funds received will have a percentage disbursed to Fixed Obligations in priority by type.  The Inmate Banking System (IBS) will then go to the next fixed obligation type if funds are remaining."  <u>See</u> DOC Policy 1.1.B.2  at p. 7.

The next section of the policy explains that fixed obligations will be paid according to the inmate's financial plan, and according to a set priority.  The first priority on the list is child support, and the last is cost of incarceration. <u>See</u> DOC Policy 1.1.B.2, at pp. 7-8.  Later, the policy explains that each inmate has an "Inmate Financial Worksheet" and that "court ordered obligations will be recorded based on the docket number."  <u>See</u> DOC Policy 1.1.B.2, at p. 11.

Comparing the language of the policy to the transaction report Davi attached to his Supplement/Brief  (Docket 4-1, p.1) the court finds no error. After Davi's $488.71 was received from the Pontiac, IL Correctional Center on February 28, 2014, his spending account exceeded $140.00.  Thereafter, $24.44 was transferred to his savings account.

The statement does not indicate Davi has been charged for court costs associated with his 1991 Judgment of Conviction.  See Docket 4-1 at p. 1.  It illustrates there is a lien against Davi for $19,741.12 for Court Ordered Obligations, ("COURTO") and that on February 28, 2014, $195.48 was

deducted from his account for that purpose.   The court is unable to determine the origin of the lien, and for purposes of this opinion the origin of the lien is unimportant.

Based on the information which appears in the published decisions of the South Dakota Supreme Court, however, it appears Davi's live-in girlfriend was pregnant at the time he murdered his ex-wife.  According to Policy 1.1.B.2, the first priority for payment from an inmate's account is child support.  The number which appears next to the noted court-ordered lien deduction does not appear to be a docket number but rather a social security number.[3]  For these reasons the court assumes without deciding the deduction about which Davi complains is for a child support lien. [4]   This discussion is purely academic because it has no bearing on the outcome of this opinion.  Regardless of the origin of the lien, the allegations in Davi's Complaint fail to state a claim upon which relief may be granted because, as explained below, the implementation of the Policy does not violate the terms of Davi's Judgment and Sentence.

There is nothing unconstitutionally vague about the policy or the manner in which it was applied to Davi's funds.  The court recommends, therefore, that Davi's Complaint be dismissed for failure to state a claim upon which relief may be granted as to Count 1.

---

[3] For this reason, the court has ordered that the attachment to Docket 4 be SEALED.

[4] The same attachment to Davi's Supplement/Brief illustrates that on February 28, 2014, $152.10 was deducted from Davi's account for Costs of Incarceration ("COI").  Id.

The real gist of Davi's Complaint is that the DOC was not authorized at all to deduct $195.48 for court ordered obligations or $152.10 for costs of incarceration.   Those claims are addressed in Counts 2 and 3 below.

### 2.  Count 2:  The application of DOC Policy 1.1.B.2 Does Not Violate Davi's Criminal Judgment/Sentencing Order or the Ex Post Facto Clause.

The last page of Davi's Judgment and Sentence states:

> There to be kept, fed and clothed according to the rules and discipline governing said South Dakota State Penitentiary.

> It is further ordered that costs and fees are waived.

> Dated at Sioux Falls, Minnehaha County, South Dakota, this 17th day of June, 1991.

BY THE COURT:

/s/ Richard D. Hurd
Richard D. Hurd
Circuit Court Judge

In Count 2, Davi asserts the enforcement of Policy 1.1.B.2 violates the terms of his June 17, 1991 Sentencing Judgment and Order.  The basis of this claim is the last page of the Judgment which states "[t]here to be kept, fed and clothed according to the rules and discipline governing said South Dakota State Penitentiary.  It is further ordered that costs and fees are waived."  In his Supplement/Brief, Davi further asserts that "[b]y charging court costs and incarceration costs, this clearly violates the judgment and sentencing order given by Judge Hurd.  Petitioner falls under the Ex-Post facto law as to why this money cannot be taken from him."  Docket 4 at p. 3.

11

First, the South Dakota Supreme Court has upheld an inmate challenge to the legality of deducting the cost of incarceration from inmate accounts. Clay v. Weber, 733 N.W.2d 278, 283 (S.D. 2007). In that case, the South Dakota Supreme Court cited a South Dakota statute as the authority under which the DOC was authorized to withdraw money from inmate accounts for the costs of their incarceration. Id. at 282. That statute states:

> **24-2-28   Costs of confinement and services—Liability of inmate**
> Each inmate under the jurisdiction of the Department of Corrections is liable for the cost of the inmate's confinement which includes room and board charges; medical, dental, optometric and psychiatric services charges; vocational education training; and alcoholism treatment charges.
> However, if the secretary of corrections determines after considering the net income, net worth, number of dependents, and any existing obligations of the inmate, that the inmate is unable to pay, the secretary may waive all or part of the payment for the costs of the inmate's confinement.
>
> The current version of this statute indicates it was first enacted in 1985.

Id. In Clay, the South Dakota Supreme Court noted the Department of Corrections was authorized but not required to implement rules to collect court ordered fines, costs, fees, restitution, and any other obligation incurred while under the DOC jurisdiction. Clay, 733 N.W.2d at 283. The court noted that "even if there were no administrative rules formally adopted under SDCL ch 1-26, the Administrators had statutory authorization for the diversion of the Inmates' money." Id.

Similarly, SDCL § 24-2-29 authorizes the DOC to deduct from inmate accounts the costs of court-ordered fines, costs, fees, sanctions, restitution,

12

and other obligations incurred while the inmate is under the jurisdiction of the

DOC.  SDCL § 24-2-29 states:

> **24-2-29.  Inmate's liability for court-ordered fines, costs, fees, sanctions, and restitution and obligations incurred under Department of Corrections jurisdiction –Disbursement from inmate's account**
>   Each inmate is liable for court-ordered fines, costs, fees, sanctions, and restitution and any obligation incurred while under the jurisdiction of the Department of Corrections including those provided for in §§ 24-2-28, 24-7-3, 24-8-9, 24-15-11, 24-15A-24, and 23A-35B-4 and any other charge owed to the state. Disbursement shall be made from an inmate's institutional account to defray the inmate's obligation, regardless of the source of the inmate's funds, including moneys in the inmate's institutional account pursuant to § 24-2-5 and wages earned by the inmate pursuant to §§24-4-9, 24-7-3(3), 24-7-6, and 24-8-8.

The current version of this statute indicates it was first enacted in 1994.  Id.

### a.  Neither deduction about which Davi complains violates the terms of his Sentencing Judgment.

Davi asserts that both the deduction for $152.10 (costs of incarceration) and $195.48 (court ordered obligations) violate the terms of his Sentencing Order and Judgment.  A fair reading of Davi's  Judgment and Sentence, however, does not indicate  Judge Hurd intended to relieve Davi from the burden of his costs of *incarceration*, but rather from the costs and fees associated with his *prosecution*.

This meaning can be gathered from the common sense, plain language of the Judgment and Sentence itself.  "A court's order must be read utilizing common sense."  Benedetti v. Soo Line Railroad Company, 2004 WL 2222281 (N.D. Ill. Sept. 29, 2004) at *2.   Specifically, the last two sentences of Davi's Judgment and Sentence are separated into two separate paragraphs.  They

13

state, "[t]here to be kept, fed and clothed according to the rules and discipline governing said South Dakota State Penitentiary."

In the next, separate paragraph, Judge Hurd ordered, "[i]t is further ordered that costs and fees are waived."  See Exhibit A to this opinion.

The first sentence allows for the DOC to collect the costs of Davi's incarceration pursuant to SDCL § 24-2-28.  The second sentence, in a separate paragraph, and addressing a separate subject,  waives the fees and costs of Davi's prosecution which would have normally been allowed to be included in the Judgment and Sentence pursuant to the South Dakota Rules of Criminal Procedure, SDCL §§ 23A-27-26 and 27.  Those statutes provide:

> **23A-27-26.  Judgment against defendant for costs—Items excluded—Enforcement as civil judgment**
>   In all criminal actions, upon conviction of the defendant, the court may adjudge that the defendant pay the whole or any part of the costs of that particular prosecution in addition to the liquidated costs provided by § 23-3-52.  However, the costs shall not include items of governmental expense such as juror's fees, bailiff's fees, salaries and expenses of special agents, and reporter's per diem.  Payment of costs may be enforced as a civil judgment against the defendant.
>
> **23A-27-27.  Fees and costs included in judgment for costs against defendant.**
>   The statutory fees of the sheriff incurred in connection with the prosecution and witnesses' fees and mileage paid or ordered paid by the county including fees of witnesses, costs of transcripts, court appointed counsel fees, filing fees, breathalyzer test fees, blood test fees, and other chemical test fees may be included in the judgment for costs.

That Judge Hurd exercised his discretion to waive the costs and fees incurred  in connection with Davi's *prosecution* as allowed by SDCL §§ 23A-27-26 & 27 does not preclude the DOC from collecting the costs of Davi's

14

*incarceration*—costs Judge Hurd specifically authorized in the Judgment and Sentence when he stated Davi was to be "kept, fed and clothed *according to the rules and discipline governing said South Dakota State Penitentiary,*" and which are allowed to be collected from Davi's account pursuant to SDCL § 24-2-28.

Davi also asserts the deduction for "obligation payment" in amount of $195.48 and reflected in the statement attached as Docket 4-1 is a deduction for "court costs" related to his criminal prosecution in violation of his June, 1991 Sentence and Judgment.  As explained above, however, the attachment to Docket 4-1 reveals the deduction is not related to any costs or fees that were assessed against him in connection with his criminal conviction (none were assessed), but rather  to a lien against Davi in the amount of $19,741.12.

As further evidence that the $19,741.12 is not related to Davi's criminal Sentence and Judgment, the Court notes the Policy about which Davi complains requires that "court ordered obligations will be recorded based on the docket number."  See DOC Policy 1.1.B.2, at p. 11.  The docket number for Davi's 1991 murder conviction is CR 90-4826.  That number does not appear next to the February 28, 2014 deduction for $195.48.   Instead, there is a notation that the deduction is for an obligation payment (COURTO-lien), along with reference to a different number which appears to be a social security number.

For all of these reasons, a commonsense reading of Davi's complaint along with his 1991 Judgment and Sentence indicates neither deduction about which Davi complains violates the terms of Davi's Sentence and Judgment.  It

15

is recommended that this portion of Count 2 be dismissed for failure to failure to state a claim upon which relief may be granted.

### b. The DOC's policies allowing deductions from inmate accounts do not violate the Ex Post Facto Clause.

"The Ex Post Facto Clause forbids enactment of a law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." <u>Zink v. Lombardi</u>, 2015 WL 968176 (8th Cir. March 6, 2015) at *13 (citations omitted).   Davi asserts the DOC policy which allows deductions from his inmate account violates the Ex Post Facto clause.[5]  He bases this claim upon his assertion that Policy 1.1.B.2 "enacted about 1996 was not put in place after Petitioner's sentence in 1991; it also clearly disadvantages Petitioner by taking money sent to him from friends and family." Docket 4 at p. 4.

First, the court notes that as explained above, the statutory authority for deductions from inmate accounts originated in 1985, not 1996.  Even assuming the relevant policy did not come into existence until after Davi's 1991 conviction, <u>Clay</u> explains the statutory authority of SDCL § 24-2-28, standing alone, is sufficient to support the deductions from inmate accounts for costs of incarceration.

The Eighth Circuit, however, has squarely rejected the notion that policies which authorize deductions from inmate accounts violate the Ex Post

---

[5] Article 1, Section 9, Clause 3 of the United States Constitution states:  "No Bill of Attainder or ex post facto Law shall be passed."  Article 1, Section 10, Clause 1 of the United States Constitution states:  "No State shall,  . . . pass any  . . . ex post facto law . . ."

Facto clause.  See Hodgson v. Wood, 107 F.3d 875 at *1 (8th Cir. 1997) (unpublished) (per curium).

In Hodgson, the plaintiff inmate asserted that a policy implemented beginning in 1994 by the Minnesota Department of Corrections which allowed deductions from inmate accounts for the cost of inmate room and board violated the Ex Post Facto clause.  Id.  The plaintiff was already incarcerated when the policy went into effect.  Id.  The Eighth Circuit rejected Hodgson's  Ex Post Facto claim, explaining it failed because the policy "was implemented to defray the costs of supporting the inmate population, not to punish him for his past criminal acts."  Id.  at *2.  The same is true in this case.  For these reasons, the court recommends the portion of Count 2 which is based upon Davi's Ex Post Facto argument  likewise be dismissed for failure to state a claim upon which relief may be granted.

### 3. Count 3: Davi has not stated a claim upon which relief may be granted as to the implementation of Policy 1.5.D.3.

Davi styles his final cause of action as a due process and free speech claim, based on the implementation of DOC Policy 1.5.D.3.  Davi asserts his mail has been "censored" and his free speech rights have been infringed because incoming mail which is not from an attorney is limited to ten pages at a time.  See  Complaint, Docket 1 at p. 6.  Davi's due process claim is grounded in part upon his belief that Policy 1.5.D.3 is so vague that a person of ordinary intelligence cannot understand its prohibitions.  See Docket 4 at p. 4.

Davi reiterates that the policy limits the volume of material sent from a non-legal source and "legal material is only legal material if it's sent from an

attorney." Docket 4 at p. 4.  Davi believes the inability of his non-attorney friends and family members to send him case law which is more than ten pages in a single envelope infringes upon his right to access the courts. Id. at p. 4. In his Brief/Supplement, Davi explains he believes the enforcement of Policy 1.5.D.3 hampers his access to the courts and violates his freedom of speech. Id.

### a. Policy 1.5.D.3 is not unconstitutionally vague.

"It is axiomatic that due process requires fair notice of prohibited conduct before a sanction can be imposed . . . This principle applies within the prison setting." Williams v. Nix, 1 F.3d 712, 716 (8th Cir. 1993) (citations omitted).

Prisoners regularly invite the courts to find penal institutions have violated their constitutional rights by enforcing policies which the prisoners interpret as overbroad or vague.  In order for a civil statute or regulation to be void for vagueness, it must be "so vague and indefinite as really to be no rule or standard at all." Boutilier v. Immigration and Naturalization Serv., 387 U.S. 118, 123 (1967).  Even if one construes the rule Mr. Davi complains about to be quasi-criminal in nature, penal statutes are not unconstitutionally vague if persons of ordinary intelligence can understand the core meaning of the statute and discern what conduct is described or prohibited.  Skilling v. United States, 561 U.S. 358, 402-03 (2010); Cotton States Mut. Ins. Co. v. Anderson, 749 F.2d 663, 669 n.9 (11th Cir. 1984); Brache v. County of Westchester, 658 F.2d 47, 51 (2d Cir. 1981).  In addition, the Supreme Court has cautioned that

18

courts must accord substantial deference to the professional judgment of prison officials in fashioning rules for the regulation of their prisons. <u>Overton v. Bazzetta</u>, 539 U.S. 126, 132 (2003). The burden is on the prisoner to disprove the validity of the rule or regulation. <u>Id.</u> This standard is not met when the only evidence proffered is the plaintiff prisoner's "own professed inability to understand what is required of him to conform to prison rules" to prove the regulations were so vague as to be invalid. <u>See</u> <u>Klinger v. Dept. of Corrections</u>, 31 F.3d 727, 733 (8th Cir. 1994). In <u>Klinger</u> the Eighth Circuit cautioned "courts are ill-equipped to deal with the increasingly urgent problems of prison administration. Because courts have little expertise in the inordinately difficult task of running prisons, courts should accord a high degree of deference to prison authorities." <u>Id.</u> (internal citations omitted).

With these principles in mind, the court has reviewed South Dakota DOC Policy 1.5.D.3. It is entitled "Offender Correspondence," and is quite comprehensive, at twenty-eight pages long. As explained in the FACTUAL BACKGROUND section above, the Policy explicitly sets out materials which, if contained in either incoming or outgoing correspondence, may be subject to rejection. Among the items listed in the policy subject to rejection are "more than ten (10) sheets of paper." This prohibition is very clear. Despite Davi's professed inability to understand the policy, the Court finds as a matter of law that it is not unconstitutionally vague. For this reason, it is respectfully recommended to the district court that Count 3 of Davi's Complaint be

dismissed for failure to state a claim upon which relief may be granted as to his due process challenge based upon vagueness of Policy 1.5.D.3.

### b. Policy 1.5.D.3 does not unconstitutionally restrict Davi's access to the courts.

Next, Davi asserts the implementation of Policy 1.5.D.3 unconstitutionally restricts his access to the courts.  Davi elaborates on this claim in his Supplement/Brief (Docket 4) where he both alleges the law library at the SDSP is inadequate, and explains  the policy is unconstitutional  "by requiring this case law to be mailed in 10 pages at a time, costing family members more money to help Petitioner with meaningful access to the court."  Docket 4 at p. 4.  Notably, Davi does not assert his friends and family members are not allowed to send him legal materials or case law, but only that they are limited to sending it ten pages at a time.

This portion of Count 3 is easily dispatched.  First, regardless of the mail policy regulating the manner in which he receives copies of case law or from whom, Davi has failed to adequately state a claim for interference with his First Amendment right of access to the courts.

The Supreme Court of the United States has explicitly recognized that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828, (1977) (emphasis added).  "[C]onsistent with the constitutional right asserted by the plaintiff, namely the right of meaningful access to the courts,

20

the term 'adequate' as used in <u>Bounds</u> to modify 'assistance from persons trained in the law' refers not to the effectiveness of representation, but to the adequacy of the prisoner's access to his or her court-appointed counsel or other law-trained assistant." <u>Schrier v. Halford</u>, 60 F.3d 1309, 1312-13 (8th Cir. 1995).

 The Supreme Court later explained that "<u>Bounds</u> did not create an abstract, freestanding right to a law library or legal assistance . . . .the inmate must therefore go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." <u>Lewis v. Casey</u>, 518 U.S. 343, 351, (1996).  The inmate must demonstrate that a nonfrivolous legal claim has been frustrated or is being impeded.  <u>Id.</u> at 353.[6]  To prevail on an access to the courts claim, an inmate must show he has suffered an actual injury (<u>Moore v. Plaster</u>, 266 F.3d 928, 933 (8th Cir. 2001), and that he has suffered prejudice (<u>Berdella v. Delo</u>, 972 F.2d 204, 209 (8th Cir. 1992)).  It has been noted that:

> in order for an inmate to show [inadequate legal facilities] hindered his efforts to pursue a  . . . legal claim, he must show that he encountered more than mere delay or inconvenience.  Indeed, a delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.  . . . In other words, if an inmate experienced delays in pursuing a  . . . claim, but files acceptable legal pleadings within court deadlines, he cannot claim he was prejudiced by shortcomings in a prison's law library, because he has sustained no relevant actual injury.

---

[6]The Eighth Circuit has stated, "<u>Lewis</u> limits the scope of the right of access to the courts to the filing of an action attacking a sentence or challenging conditions of confinement." <u>Cody v. Weber</u>, 256 F.3d 764, 770 (8th Cir. 2001).

Benjamin v. Kerik, 102 F.Supp.2d 157, 164 (S.D. N.Y 2000) aff'd 264 F.3d 175 (2nd Cir. 2001).  See  also, Holloway v. Dobbs, 715 F.2d 390 (8th Cir. 1983) (prisoner's  access to the courts claim dismissed when prisoner was represented by counsel during time in question); Brooks v. Buscher, 62 F.3d 176, 179 (7th Cir. 1995) (prisons must provide access to law library or to persons trained in the law, but not both); Brinson v. McKeeman, 992 F.Supp. 897, 909 (W.D. Tex. 1997) ("[T]he state must furnish indigent inmates with a pen and paper to draft legal documents, stamps to mail them, and adequate opportunity to conduct legal research through access to adequate law libraries *or* access to 'persons trained in the law' or other persons who can provide legal assistance.") (emphasis added).

In this case, Davi has alleged at most that his friends and relatives have been inconvenienced or put to extra expense by having to mail him case law which exceeds ten pages in separate envelopes rather than in one envelope. Davi has not alleged a nonfrivolous legal claim has been frustrated or is being impeded . Lewis,  518 U.S. at 353.  He has not alleged he has suffered any actual injury.  Moore, 266 F.3d at 933.  Nor has he alleged prejudice.  Berdella , 972 F.2d at 209.

Finally, Davi asserts Policy 1.5.D.3 restricts his access to the courts because it allows attorneys to send legal material/case law into the prison unrestricted  by page limits, but those same items sent by non-attorney family members or friends  are subject to restrictions.  Davi's access to the courts claim is foreclosed by the Eighth Circuit's decision in Weiler v. Purkett, 137

22

F.3d 1047, 1050 (8th Cir. 1998).  In that case, the plaintiff prisoner filed suit claiming a prison policy violated his First Amendment right to receive mail and access to the courts.  Id. at 1050-51.  The prisoner's package was rejected because although it was marked as "legal materials" it was mailed from the prisoner's son.  Id.  The prisoner argued that other inmates had received legal paperwork and transcripts from their family members (despite the regulation) and their packages were not rejected nor were the prisoners punished.  (The prison regulations allowed legal mail which came from only from an attorney, judge or elected official).  Id. at 1051.  The court noted "[a]lthough it is well settled that inmates have a right to receive mail, that right may be limited by prison regulations that are reasonably related to legitimate penological interests."  Id. at 1050.

> It is clear that a regulation limiting the receipt of packages is not facially invalid.  In Bell v. Wolfish, 441 U.S. 520, 555 (1979), the Supreme Court approved a total ban on the receipt of packages containing food or personal property except for one package of food at Christmas, saying, it is 'all too obvious that such packages are handy devices for the smuggling of contraband.'
>
> ***
>
> We find it beyond dispute that packages may easily conceal contraband, and that the control of contraband is a legitimate penological interest.  Thus, even if 100 inmates had received legal papers through a breakdown in mailroom procedures, and were willing to so state by affidavit, the reasonableness of legal mail or package regulations, designed to control the receipt of contraband to inmates, would be no less constitutional.  There is no evidence that the ten inmates who received packages in contravention of prison rules also did not receive contraband concealed in those packages.  Given the great deference we owe to prison authorities in their administration of state prison systems, we cannot say this regulation is an exaggerated response to the prison's security concerns . . . [Plaintiff] has not alleged a violation of his constitutional right to receive mail.

23

Id. at 1050-51.  The Court also rejected the plaintiff's claim of interference with

his right to access to the courts, because it found he had not established any

interference with his legal mail.  Id. at 1051.

> A prison policy that obstructs privileged inmate mail can violate
> inmates' right of access to the courts.  [Plaintiff], however, has not
> established any interference with legal mail.  The regulation
> defines legal mail as correspondence from an attorney, judge or
> elected official.  This type of formulation has been expressly
> approved by the Supreme Court.  Wolff v. McDonnell, 418 U.S.
> 539, 576 (1974) ("We think it entirely appropriate that the State
> require [legal mail] to be specially marked as originating from an
> attorney . . .").  Even though the [rule at hand] even more generous to inmates
> that the Wolff requirements, passes constitutional muster as a
> matter of law.  Since the package came from a family member, not
> a person or entity specified in the rule, it was not legal mail.
> [Plaintiff] has not alleged a violation of his constitutional right of
> access to the courts.

Id. at 1051 (internal punctuation altered, other internal citations omitted).

Similarly, the "Definitions" section of Policy 1.5.D.3 defines privileged/legal

correspondence as having a clearly identified sender or recipient being one of

the following:  attorney or attorney's approved designee; judge or officer of the

court (state or federal); organization or entity which is known to provide legal

services to offenders, or specific governmental officials or agencies identified in

Attachment 1 that identify the mail as "legal" or "privileged."[7]  See Policy

1.5.D.3, p. 3, Section III "Definitions."  Davi has not alleged that any of his

privileged or legal correspondence was rejected.  As such, his Complaint falls

---

[7] Attachment 1 to Policy 1.5.D.3 provides a comprehensive list of governmental
agencies which might provide privileged legal information to inmates.  It
includes, but is not limited to public defenders offices, public advocates offices,
East/West River Legal Services, Dakota Plains Legal Services, and the ACLU.
See Policy 1.5.D.3, page 16 (Attachment 1).

squarely within the holding of <u>Weiler</u>.  For all of these reasons, this portion of Count 3 of Davi's  Complaint fails to state a claim upon which relief may be granted.  It is recommended to the district court that this portion of Count 3 be dismissed.

### c. Policy 1.5.D.3 does not unconstitutionally violate Davi's freedom of speech.

Finally, Davi asserts Policy 1.5D.3 violates his freedom of speech.  Davi does not explain how the policy restricts his freedom of speech except to state the ten page limit on non-privileged/legal mail amounts to "censorship." Docket 1 at p.6.

"Although it is well settled that inmates have a right to receive mail, that right may be limited by prison regulations that are reasonably related to legitimate penological  interests." <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1050 (8th Cir. 1998) (citing <u>Turner v. Safley</u>, 482 U.S. 78, 89 & 92 (1987)).  "Because the Constitution permits greater restriction of First Amendment rights in a prison than it would allow elsewhere, restrictive prison regulations are normally reviewed under the four factor <u>Turner</u> test to determine whether they are reasonably related to  legitimate penological interests." <u>Beaulieu v. Ludeman</u>, 690 F.3d 1017, 1039 (8th Cir. 2012) (citations omitted, punctuation altered). The four <u>Turner</u> factors are:  (1) whether there is a valid, rational connection between the regulation and legitimate governmental interests put forward to justify it; (2) whether alternative means of exercising their rights remain open to the prisoners; (3) whether accommodation of the asserted rights will trigger a 'ripple effect' on fellow inmates and prison officials; and (4) whether a ready

25

alternative to the regulation would fully accommodate the prisoners' rights at de minimis cost to the valid penological interest.  Id.   In Weiler the Eighth Circuit upheld as constitutional a prison mail restriction which prohibited incoming packages from anyone except attorneys or other approved vendors, because packages might contain contraband and the control of contraband is a legitimate penological interest.  Weiler, 137 F.3d at 1050-51.  The court has not located an Eighth Circuit case in which the regulation at issue limited incoming mail from non-privileged/legal sources to a certain number of pages. Other jurisdictions, however, have held that such regulations pass muster under the Turner test.

In Prison Legal News v. Babeu, 933 F.Supp.2d 1188, 1202-1203 (D. AZ., March 20, 2013) the court examined a First Amendment free speech challenge to a prison regulation limiting incoming correspondence to prisoners to one-page letters or postcards.  The justification offered for the regulation was (as in Weiler  for the ban on packages from non-privileged/legal sources) reduction in mail that must be screened for contraband.  Id. at 1202.  The court performed the Turner analysis, and found the regulation did not offend the First Amendment.  Id. at 1203.  First, the reduction of contraband is a legitimate goal in penological institutions.  Id.  The court likewise determined there was a common sense connection between the goal of reducing contraband and limiting the number of pages particular piece of mail contains.  Id.  The court also noted that despite the page limitation, "lines of communication are open for all who wish to send letters to prisoners . . .the remaining Turner factors do

26

not counsel against the constitutionality of the jail's policy." Id.  See also,

Perkins v. Demeyo, 2014 WL 5782769  at * 7 (D. Nev. , Nov. 6, 2014)(postcard

only policy upheld as constitutional).

Davi has failed to sufficiently articulate a First Amendment freedom of

speech cause of action regarding the implementation of Policy 1.5.D.3.  At

most, he claims his friends and relatives are put to extra expense because they

must mail anything that is more than ten pages in separate envelopes instead

of one envelope.

This inconvenience impacts the second Turner factor (whether alternative

means of exercising their rights remain open to the prisoners) but the Eighth

Circuit has cautioned that "[w]ith regard to the second Turner factor, the issue

is whether inmates have alternative means of exercising the constitutional right

they seek to assert.  Alternatives to the type or amount of speech at issue need

not be ideal they need only be available." Beaulieu, 690 F.3d at 1039 (citations

omitted, internal punctuation altered).  In Beaulieu, the court rejected extra

expense incurred by the prisoners in order to exercise their First Amendment

rights as a reason to find the policy unconstitutional.  Id. at 1039 (referring to

the prison's contracted telephone provider).

Davi has failed to sufficiently state a First Amendment freedom of speech

claim regarding the application of Policy 1.5.D.3 to his incoming mail.  As

explained above, Davi's  conclusory allegation that the policy's practice of

allowing only ten pages of paper per mailing amounts to "censorship" is wholly

insufficient to meet the challenge of overcoming the four-part test articulated in

27

<u>Turner</u> which tempers a prison inmate's First Amendment right to receive incoming mail.  For these reasons, it is recommended to the district court that this portion of Count 3 be dismissed.

## C. Davi's Filing Fee.

If Davi's suit had been allowed to proceed and he prevailed on the merits, he would have recovered the filing fee.  Both the legislative history and the case law interpreting the Prison Litigation Reform Act, however, instruct that unsuccessful prison litigants, like any other litigants, do not get their filing fees back if their cases are dismissed.  That Davi's case is dismissed pursuant to the screening procedures of § 1915 does not negate his obligation to pay the fee.  <u>In Re: Prison Litigation Reform Act</u>, 105 F.3d 1131, 1134 (6th Cir. 1997). The obligation to pay a filing fee accrues the moment a plaintiff files his complaint with the court, and it cannot be avoided merely because the case is eventually dismissed as frivolous.  <u>Anderson v. Sundquist</u>, 1 F. Supp. 2d 828, 830 n. 5 (W.D. Tenn. 1998). One of the purposes of the Prison Litigation Reform Act is to

> require the prisoners to pay a very small share of the large burden they place on the Federal judicial system by paying a small filing fee upon commencement of lawsuits.  In doing so, the provision will deter frivolous inmate lawsuits.  The modest monetary outlay will force prisoners to think twice about the case and not just file reflexively. Prisoners will have to make the same decision that law abiding Americans must make:  Is the lawsuit worth the price?

<u>Roller v. Gunn</u>, 107 F.3d 227, 231 (4th Cir. 1997) (quoting 141 Cong. Rec. at S7526 (May 25, 1995).  <u>See also</u> <u>In Re: Tyler</u>, 110 F.3d 528, 529-30 (8th Cir. 1997) (prisoner will be assessed full filing fee even if his case is dismissed

28

because "the PRLA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal."). Davi remains responsible for the $350.00 filing fee.

Davi is advised that **the dismissal of this lawsuit will be considered a first "strike" for purposes of the Prison Litigation Reform Act. 28 U.S.C. § 1915(g) provides:**

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

## CONCLUSION and RECOMMENDATION

For the reasons more fully explained above, it is RECOMMENDED to the district court that Davi's Complaint (Docket 1) and Supplement/Brief (Docket 4) be DISMISSED without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § §§ 1915(e)(2)(B)(ii) and 1915A((b)(1).

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the

29

District Court.  <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>,
781 F.2d 665 (8th Cir. 1986).

     DATED this 25th day of March, 2015.

                    BY THE COURT:

                    VERONICA L. DUFFY
                    United States Magistrate Judge